# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDOCARB CORPORATION, INC., a Delaware Corporation registered in Pennsylvania, | 2:19-cv-889 |
| | Magistrate Judge Maureen P. Kelly |
| Plaintiff, | Judge J. Nicholas Ranjan |
| vs. | |
| SANTHOSH KUMAR MADHAVAN, an individual, and INDOCARB AC LLC, a Pennsylvania Limited Liability Corporation, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORT AND RECOMMENDATION [ECF 45]

This case arises from Indocarb Corporation, Inc.'s claim that its former employee, Santhosh Kumar Madhavan, stole its assets, trade secrets, and intellectual property and diverted them to an entity he controlled with a similar name, Indocarb AC LLC. Before considering the merits of this dispute, however, the Court has to decide two threshold questions related to arbitration: (1) whether there is an agreement to arbitrate; and (2) who decides the scope of that agreement. In her Report and Recommendation [ECF 45], Magistrate Judge Kelly concluded that a valid agreement to arbitrate exists and that the arbitrator should decide which claims are subject to arbitration. Because no party filed timely objections, the Court will apply a deferential, plain-error standard of review to the Report and Recommendation. Magistrate Judge Kelly's conclusions were not plain error for two reasons.

First, the parties do not dispute that Indocarb and Mr. Madhavan entered into a Transition Agreement. That agreement broadly provides that "any disagreement arising under this Agreement that is not resolved by agreement between the parties, will be resolved by arbitration in accordance with the rules of the American Arbitration Association." Before Magistrate Judge Kelly, Indocarb tried to avoid arbitration by arguing that Mr. Madhavan procured the Transition Agreement (including, specifically, a release provision within that agreement) by fraud. But to avoid arbitration, Indocarb needed to attack specifically the agreement to arbitrate, not the broader contract containing that agreement or other provisions of that contract. Indocarb, despite many opportunities, has not come forward with any reason the agreement to arbitrate should be set aside.

Second, the parties incorporated the American Arbitration Association's rules in their arbitration provision. Although still an open issue in the Third Circuit, most courts have held that incorporating those rules means the parties delegated to the arbitrator the responsibility of deciding which claims are arbitrable. Following that line of cases, Magistrate Judge Kelly concluded that the Court cannot address Indocarb's arguments that its claims do not "arise" under the Transition Agreement. It was not plain error for Magistrate Judge Kelly to follow the majority view on an open issue.

Finally, the fact that Indocarb AC LLC is not a party to the Transition Agreement does not change the outcome. Indocarb's claims against Indocarb AC LLC are so intertwined with the claims against Mr. Madhavan that allowing them to proceed in this Court would be a mistake. Magistrate Judge Kelly properly stayed the entire case pending the conclusion of the parties' arbitration proceedings.

The Court therefore adopts Magistrate Judge Kelly's Report and Recommendation, denies Defendants' motion to dismiss, and grants Defendants' motion to stay.

## **FACTUAL & PROCEDURAL BACKGROUND**

Based on its general misappropriation of assets theory, Indocarb brings nine claims:

| Count | Cause of Action |
|---|---|
| 1 | False designation, false origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* |
| 2 | Theft of trade secrets in violation of the Federal Trade Secrets Act of 2016, 18 U.S.C. § 1836 |
| 3 | Unauthorized access and use of computer records in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 |
| 4 | Violation of Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5302 |
| 5 | Tortious interference with existing and prospective contractual relationships |
| 6 | Conversion |
| 7 | Breach of contract |
| 8 | Conversion of computer proprietary information |
| 9 | Breach of fiduciary duty and obligation |

[ECF 1]. Indocarb also seeks a preliminary injunction. [ECF 3; ECF 4]. Indocarb asks the Court to enjoin Mr. Madhavan's operation of a competing business in the United States. [*Id.*]. It also asks the Court to order Mr. Madhavan to account for and return assets owned by Indocarb. [*Id.*].

In response, Defendants' moved to dismiss or stay the case pending arbitration. [ECF 9]. In support of their motion, Defendants point to an

arbitration provision in the Transition Agreement signed by Mr. Madhavan and Mr. M.M. Abdul Basheer, President of Indocarb. [ECF 9, at ¶ 5; ECF 9-4]. Mr. Basheer confirmed that he executed the Transition Agreement on behalf of Indocarb. [ECF 1-10].

The purpose of the Transition Agreement was to continue Mr. Madhavan's employment with Indocarb as a consultant for a six-month period. During that time, he would "identify markets for the remaining [saleable] inventory in [Indocarb's] warehouse, disposition of machinery and any other assets, and other duties and responsibilities as required which are consistent with duties and responsibilities of persons in similar executive capacities for daily functioning of the Corporation till closure is effected." [ECF 9-4, at § 2.01].

Article 6 of the Transition Agreement establishes Mr. Madhavan's "Post-Termination Obligations," including his obligation to return "all written confidential information" and all "property" in his possession. [ECF 9-4, at § 6.02].

Article 9 of the Transition Agreement contains an arbitration clause, which states that "any disagreement arising under this Agreement that is not resolved by agreement between the Parties, will be resolved by arbitration in accordance with the rules of the American Arbitration Association." [ECF 9-4, at § 9.01].

Before this case was filed, Mr. Madhavan started arbitration proceedings. [ECF 9, at ¶¶ 14-16]. Since then, these events have occurred in the arbitration:

| Date | Event |
|---|---|
| July 3, 2019 | Indocarb filed its answer and counterclaim |
| July 22, 2019 | Administrative conference held; parties agreed to apply the AAA's International Dispute Resolution Procedures |
| September 6, 2019 | Arbitrator selected |
| September 13, 2019 | Defendants submitted response to Indocarb's counterclaim |
| September 18, 2019 | Indocarb filed the Complaint from this case as "a supplement to the Answer and Counterclaim of Respondents filed on July 3, 2019" |
| October 15, 2019 | Preparatory conference held; arbitrator issued First Pre-hearing Order stating that "[t]he parties will file submissions on the arbitral jurisdiction issue[.]" |
| October 25, 2019 | Parties file submissions on arbitral jurisdiction |
| November 8, 2019 | Arbitrator issued the "Second Pre-hearing order – jurisdiction," finding the arbitration clause to be valid and the dispute to be arbitrable |

[ECF 32, at ¶¶ 1-3, 8-14, 19]. The arbitration remains ongoing.

After arbitration started, Indocarb filed this lawsuit. [ECF 1]. The case was then referred to Magistrate Judge Kelly for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.C and 72.D of the Local Rules of Court for Magistrate Judges.

Magistrate Judge Kelly filed a Report and Recommendation, recommending that the Court deny Defendants' motion to dismiss, grant Defendants' motion to stay, and stay the entire litigation, including the pending motion for preliminary injunction, until the parties' arbitration proceedings are done. [ECF 45].

## **STANDARD OF REVIEW**

Litigants "must seek review by the district court by filing objections within 14 days of the date of the Report and Recommendation with the Clerk of the district court[.]" *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (cleaned up).

If objections are timely filed, the Court shall "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"When parties fail to file timely objections to a magistrate judge's report and recommendation, the Federal Magistrates Act does not require a district court to review the report before accepting it." *Larson v. Garman*, No. 1:16-cv-2064, 2019 WL 1125877, at *1 n.1 (M.D. Pa. Mar. 12, 2019) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). In other words, by failing to file timely objections, the parties have "waived [their] right to have this Court conduct a de novo review of the factual and legal conclusions which form the bases for … the Magistrate Judge's decision." *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) (cleaned up), *aff'd*, 276 F. App'x 125 (3d Cir. 2008).

While de novo review is not required, as a matter of good practice, the Third Circuit does expect district courts to "afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). This Court has found that the appropriate scope of review in this scenario is "the far more deferential standard of 'plain error.'" *Tice*, 425 F. Supp. 2d at 680. This standard tracks what other district courts in the Third Circuit apply. *See, e.g., Larson*, 2019 WL 1125877, at *1 n.1 (holding that when no timely objection is filed, "the court need only satisfy

itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing Fed. R. Civ. P. 72(b), advisory committee notes); *Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) (holding that the court will review the report and recommendation for "clear error" when the parties failed to file timely objections).

Under the plain-error standard, a court should only reject a magistrate judge's report and recommendation where there is an error that (1) is "clear or obvious," (2) affected "substantial rights," and (3) "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007) (cleaned up). Reversal for plain error "should only be invoked with extreme caution in the civil context." *Fashauer v. N.J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1289 (3d Cir. 1995). In fact, "plain error review is so disadvantageous to the losing party" that the Third Circuit has advised magistrate judges to caution litigants that a failure to timely file objections "*will* waive the right to appeal." *Brightwell*, 637 F.3d at 193 n.7 (cleaned up).

## DISCUSSION & ANALYSIS

### I.  The Court will apply a plain-error standard of review.

Magistrate Judge Kelly issued her Report and Recommendation on January 29, 2020. As a result, any objections were due on February 12, 2020. Indocarb, however, did not file its objections until February 14, 2020—two days after the deadline. [ECF 48]. It is clear Indocarb was aware of the deadline because it dated its objections "February 12, 2020." Yet Indocarb did not seek an extension to file its objections. Nor does Indocarb offer any explanation or justification for its tardiness.

The deadline that this Court sets for filing objections is important, not unlike the deadline for filing a notice of appeal in the Third Circuit. And

Magistrate Judge Kelly explicitly warned Indocarb about the consequences for failing to timely file objections. [ECF 45, at 12-13]. The Court therefore finds that Indocarb has waived its untimely objections to the Report and Recommendation and will apply a plain-error standard of review.[1]

## II. The Court will stay this case until the conclusion of the parties' arbitration proceedings.

Defendants ask this Court to confirm that arbitration is the proper venue for this case, which Indocarb disputes.

Before an unwilling party can be compelled to arbitrate, the Court must make determinations on the gateway issues of whether: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted).

To avoid arbitration, Indocarb made two arguments before Magistrate Judge Kelly. First, Indocarb argued that the Transition Agreement, in its entirety, was "procured through fraud, fraudulent inducement, misrepresentation, unconscionability, and/or mistake." [ECF 37, at 8]. Second, Indocarb argued that its claims do not fall with the scope of the Transition Agreement's arbitration provision. [*Id.* at 21]. Magistrate Judge Kelly was right that neither argument prevents this Court from staying the litigation until the conclusion of the parties' pending arbitration proceedings.

### A. The arbitrator addresses the enforceability of the Transition Agreement.

Before Magistrate Judge Kelly, Indocarb claimed that "there were material misrepresentations made that induced the acceptance and execution of the Release and Arbitration Clause." [ECF 37, at 9]. Specifically, Indocarb

---

[1] Defendants too did not file any objections.

argued that Mr. Madhavan misrepresented that he would "continue to honor his fiduciary duty as Vice President, act in Plaintiff's best interest, and protect the corporate assets so that they may be returned." [*Id.* at 10]. According to Indocarb, those misrepresentations were the only reason it entered into the Transition Agreement containing the arbitration provision. [*Id.* at 11].

Magistrate Judge Kelly correctly determined that this challenge was "to the conditions under which [Indocarb] entered into the Transition Agreement" and therefore "does not implicate the arbitration provision specifically." [ECF 45, at 8-9]. For that reason, "any dispute about the validity of the Transition Agreement must be resolved in arbitration." [*Id.* at 9].

The Supreme Court has clearly stated that while courts can hear a challenge to an otherwise controlling arbitration agreement, that challenge "must focus exclusively on the arbitration provision, rather [than on] the contract as a whole." *S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 143 (3d Cir. 2016) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). "If the challenge encompasses the contract as a whole, the validity of that contract, like all other disputes arising under the contract, is a matter for the arbitrator to decide." *Id.*

In its briefs to Magistrate Judge Kelly, Indocarb raised a fraud defense to the Transition Agreement as a whole. Indocarb never claimed that Mr. Madhavan hid, misrepresented, or mistakenly added the arbitration provision. [ECF 36-4, at 73-87, 142, 159, 173]. Instead, Indocarb asserted that Mr. Madhavan essentially tricked it into entering into the Transition Agreement, which happened to include an arbitration provision. Such a challenge does not allow the Court to ignore the parties' contractual agreement to arbitrate their

disputes.² *See, e.g.*, *Metcalf v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 768 F. Supp. 2d 762, 771–72 (M.D. Pa. 2011) ("To argue that Defendants made misrepresentations about the agreement as a whole in attempting to invalidate the arbitration provision, without specifically alleging misrepresentations or fraud as to the arbitration clause itself, fails to raise a genuine issue of material fact as to whether a valid arbitration clause existed."); *Lawson v. City of Philadelphia*, No. 18-1912, 2019 WL 934976, at *3 n.1 (E.D. Pa. Feb. 25, 2019) ("Plaintiff Lawson alleges a grand conspiracy was at play when she signed the JVA with Harris Defendants. She does not, however, specifically allege she was fraudulently induced into the arbitration clause of the JVA.") (cleaned up).

### B. It was not plain error to conclude that the arbitrator must decide all arbitrability issues.

Indocarb also argued that its claims fall outside the scope of the arbitration agreement. [ECF 37, at 21-23]. Magistrate Judge Kelly correctly concluded, however, that "whether the scope of the arbitration agreement reached each of Indocarb's claims must be decided by the arbitrator in the first instance." [ECF 45, at 10].

Typically, courts get to decide whether a claim falls under the scope of an arbitration agreement. But under the Federal Arbitration Act, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524,

---

² Indocarb's untimely objections to Magistrate Judge Kelly's Report and Recommendation reinforce this conclusion. That is, Indocarb concedes in those objections that it is "NOT seeking for the court to invalidate or void …the Arbitration clause within the Transition Agreement." [ECF 48, at 8 (all caps in original)].

529 (2019) (cleaned up). That's because an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. And the Supreme Court recently clarified that there are no exceptions to this delegation rule. It applies "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529. Simply put, if the Court finds that the parties delegated arbitrability—an analysis that exclusively focuses on the contours of the parties' arbitration agreement—the Court cannot consider any other issue before referring the matter to arbitration.

Given this rule, the Court must first determine whether the parties delegated arbitrability to the arbitrator before tackling any "scope" issues.

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 531 (cleaned up). Although it has not decided it, the Third Circuit has observed that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (cleaned up). The reason being that "[t]he rules of the [AAA] provide that arbitrators have the power to resolve arbitrability questions." *Henry Schein*, 139 S. Ct. at 528. Thus, the majority view is that it logically "follows that by designating and incorporating the AAA rules, a contractual arbitration provision delegates issues of arbitrability to the arbitrator." *loanDepot.com v. Crosscountry Mortgage, Inc.*, No. 18-12091, 2019 WL 2613265, at *6 (D.N.J. June 24, 2019) (citation omitted); *see also McGee v. Armstrong*, 941 F.3d 859,

- 11 -

866 (6th Cir. 2019) (finding that the parties delegated the threshold arbitrability question to an arbitrator where the provision stated that "any dispute…shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association."); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 538 (5th Cir. 2019) (finding that the parties intended "to submit questions of substantive arbitrability to an arbitrator" where "the parties incorporated the AAA's rules"); *Zabokritsky v. JetSmarter, Inc.*, No. 19-273, 2019 WL 2563738, at *4 (E.D. Pa. June 20, 2019) ("Here, the parties' agreement and the incorporated AAA Rules commit the threshold question of arbitrability to the arbitrator, not a court.").[3]

Based on this majority view, Magistrate Judge Kelly concluded that the parties agreed to delegate the issue of arbitrability to the arbitrator. The arbitration provision in the Transition Agreement states:

> **[A]ny disagreement arising under this Agreement** that is not resolved by agreement between the Parties, **will be resolved by arbitration in accordance with the rules of the American Arbitration Association.**

---

[3] There is some support from district courts in this Circuit that simply incorporating the AAA rules may not be enough to meet the "clear and unmistakable test" in certain circumstances. *See, e.g.*, *Chong v. 7-Eleven, Inc.*, No. 18-1542, 2019 WL 1003135, at *10 (E.D. Pa. Feb. 28, 2019) (finding that incorporation of the AAA rules was not enough to meet the "clear and unmistakable" test when one of the parties to the arbitration agreement was "unsophisticated."); *DCK N. Am., LLC v. Burns & Roe Servs. Corp*, 218 F. Supp. 3d 465, 472-74 (W.D. Pa. 2016) (finding that incorporation of the AAA rules was not enough when the scope of the arbitration provision was not "sweeping" and it was ambiguous which version of the AAA's rules would apply to the dispute). The Court need not (and does not) decide whether the majority view is right, only whether it was plainly wrong for Magistrate Judge Kelly to rely on it. It was not.

- 12 -

[ECF 9-4, at 3] (emphasis added). Under the AAA's standard Commercial Arbitration Rules and Mediation Procedures, the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules & Mediation Procedures, Rule 7(a). At the administrative conference in the ongoing arbitration proceedings, the parties mutually agreed to adopt the AAA's International Dispute Resolution Procedures, which provide that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement(s), or with respect to whether all of the claims, counterclaims, and setoffs made in the arbitration may be determined in a single arbitration." [ECF 32-9, at Art. 19]. Thus, under any set of potentially applicable AAA rules, arbitrability is left to the arbitrator.

In its untimely objections, Indocarb argues that Mr. Madhavan's alleged misconduct flows from obligations under a prior employment agreement. [ECF 48, at 1]. Mr. Madhavan counters that a release provision in the Transition Agreement makes that impossible, because the release bars all claims related to Mr. Madhavan's employment with Indocarb. [ECF 39, at 6-8]. Indocarb disagrees, claiming that the release provision is unenforceable. *See generally* [ECF 48]. The consequence of this, according to Indocarb, is that if the release is invalid, then the scope of its claims would fall within the prior employment agreement, which has no arbitration provision.

Even if this Court were to consider Indocarb's untimely and forfeited objections, the outcome would be the same. The enforceability of the release is a condition precedent to determining the scope of the claims covered by the arbitration provision. This "scope" issue is one of arbitrability and it was not

plain error to find that the parties delegated it to the arbitrator. *See, e.g.*, *loanDepot.com*, 2019 WL 2613265, at *7 ("There is no preclearance or gatekeeper role for the court" because the parties delegated arbitrability, so "loanDepot's vehement arguments against arbitrability may be presented to the arbitrator, who has sole authority to decide that issue."); *Varcak v. Envoy Mortgage LTD.,* No. 19-954, 2019 WL 6887192, at *5-6 (D. Or. Nov. 22, 2019) (refusing to address whether "Envoy failed to satisfy a condition precedent to arbitration" when the parties "agreed to arbitrate arbitrability").

Because it was not plain error to find that the Transition Agreement's arbitration provision, on its face, "clearly and unmistakably" delegates arbitrability issues to the arbitrator, this Court will not address Indocarb's argument that its claims rest outside the scope of the provision. Those determinations are for the arbitrator. Should the arbitrator decide, at any point, that it lacks authority over certain of Indocarb's claims, Indocarb may move to resume such claims in this Court.

### C. A stay of all claims, including those against Indocarb AC LLC, is appropriate.

Indocarb also argued before Magistrate Judge Kelly that its claims against Indocarb AC LLC are not subject to arbitration because Indocarb AC LLC is not a party to the Transition Agreement. Based in part on this argument, Magistrate Judge Kelly decided to stay, rather than dismiss, the case.[4] The Court will adopt this recommendation.

"[C]ourts have typically granted stays when there are both arbitrable and non-arbitrable claims in the same action and significant overlap exists between the parties and the issues." *Heller v. Deutsche Bank AG*, No. 04-3571,

---

[4] Defendants did not object to this aspect of the Report and Recommendation, and so the Court also assesses this issue under a plain-error standard.

2005 WL 665052, at *6 (E.D. Pa. Mar. 17, 2005) (citation omitted). The claims against Indocarb AC LLC substantially overlap with the claims against Mr. Madhavan. Indocarb alleges that Mr. Madhavan misappropriated its assets and then transferred them to Indocarb AC LLC. [ECF 1, at ¶¶ 61-63]. If Indocarb did not, in fact, misappropriate those assets, then Indocarb AC LLC cannot be liable for its role in the alleged scheme.

Given this overlap, allowing claims to move forward simultaneously in this Court and in arbitration would present a substantial risk of inconsistent results—especially since Indocarb has filed its entire complaint as a counterclaim in the pending arbitration. There is also a possibility that the arbitrator could decide that certain claims against Mr. Madhavan fall outside the scope of the arbitration provision. Under these circumstances, Magistrate Judge Kelly made the right call by recommending a stay. *See Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contractors, Inc.*, No. 10-4551, 2011 WL 1343031, at *9 (E.D. Pa. Apr. 7, 2011) ("In the interests of judicial economy and so as to avoid the possibility of inconsistent results, we will exercise our discretion and stay the litigation against Arch pending the outcome of the arbitration proceedings between Plaintiff and Abbonizio.").

### D. The stay includes the motion for preliminary injunction.

By that same token, it was not plain error for Magistrate Judge Kelly to stay Indocarb's motion for preliminary injunction. [ECF 45, at 12]. Whether this motion falls within the scope of the arbitration agreement as to Mr. Madhavan is for the arbitrator to decide, and the claims against Indocarb AC LLC overlap with the claims against Mr. Madhavan.

### CONCLUSION

After reviewing all relevant submissions and Magistrate Judge Kelly's Report and Recommendation, the Court enters the following order:

**AND NOW**, this 2nd day of April, 2020:

**IT IS HEREBY ORDERED** that the Report and Recommendation [ECF 45] is **ADOPTED** as the Opinion of the Court, as supplemented by this Memorandum Opinion and Order. Defendants' amended motion to dismiss, or in the alternative, motion to stay pending arbitration [ECF 32] is **GRANTED in part and DENIED in part.** The amended motion to dismiss is denied, and the motion to stay pending arbitration is granted. Indocarb's motion for preliminary injunction [ECF 3] is stayed until the completion of the arbitration proceedings pending before the American Arbitration Association.

             BY THE COURT:

             /s/ *J. Nicholas Ranjan*
             United States District Judge